IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DEBRA DOMASIEWICZ,** | : | **Civil No. 4:24-cv-1550** |
| | : | |
| **Plaintiff,** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **v.** | : | |
| | : | |
| **FRANK BISIGNANO**, | : | |
| **Commissioner of Social Security** | : | |
| | : | |
| **Defendant.** | : | |

**MEMORANDUM OPINION**

## I.   Introduction

The instant Social Security appeal highlights two familiar guiding tenets of law in this field. On one hand, we employ a limited scope of review when considering Social Security appeals; our task is simply to determine whether substantial evidence supports the decision of the Administrative Law Judge (ALJ). Consistent with this deferential standard of review, when, as here, we are called upon to assess whether an ALJ has sufficiently articulated a rationale for the mental and emotional components of a claimant's residual functional capacity (RFC), we have recently been instructed that this aspect of an RFC is sufficient "as long as the ALJ offers a 'valid explanation'" for the mental and emotional limitations imposed upon a worker. Hess v. Comm'r Soc. Sec., 931 F.3d 198, 211 (3d Cir. 2019).

1

On the other hand, case law imposes a clear obligation upon ALJs to fully articulate their rationale when denying benefits to disability applicants. This duty of articulation is essential to informed judicial review of agency decision-making since, in the absence of a well-articulated rationale for an ALJ's decision, it is impossible to ascertain whether substantial evidence supported that decision. At a minimum, this duty of articulation requires the ALJ to draw a legal and logical bridge between any factual findings and the final conclusion denying the disability claim.

The plaintiff in this case, Debra Domasiewicz, suffers from an array of physical and emotional impairments. She testified that she was unable to perform her past work as a collections clerk due to anxiety and panic attacks. The medical evidence of her mental impairments was limited but demonstrated she received treatment for anxiety and panic attacks and that her mental impairments were well managed under treatment. Thus, the medical record revealed some measure of emotional impairment.

Nonetheless, in considering the medical opinion evidence of these impairments, the ALJ rejected the opinion of a consultative examiner who concluded the plaintiff had no limitations in three out of four broad areas of mental functioning, instead adopting the somewhat more restrictive opinions of the non-examining State agency consultants who concluded she was mildly limited in all four broad areas of mental functioning. Despite this intentional and explicit finding that she was at least

mildly limited in her functional abilities due to these mental impairments, the ALJ did not address or discuss how these mild impairments would affect the plaintiff's ability to perform work-related activity and included no limitations for these mental impairments in the RFC.

Thus, this case illustrates the importance of providing "a clear and satisfactory explication," Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981), of the basis for the limitations that are revealed by substantial medical evidence. Here, the ALJ's decision fails to adequately summarize and consider all the evidence with regard to the plaintiff's mental impairments throughout the RFC analysis. Thus, while we still make no categorical rule that an ALJ must incorporate mild limitations in mental functioning in the residual functional capacity, in this case, the ALJ acknowledged the plaintiff suffered from some emotional limitations and expressly rejected a medical opinion which stated that the plaintiff had no restrictions but then failed to fully articulate the reasons these limitations were not included in any RFC assessment. On this unique constellation of facts, we conclude that the ALJ's burden of articulation has not been met and we will remand this case for further consideration and evaluation by the Commissioner.

## II.     **Statement of Facts and of the Case**

On July 16, 2021, Debra Domasiewicz protectively filed under Title II for a period of disability and disability insurance benefits, alleging disability beginning

3

May 28, 2018, due to an array of physical and emotional impairments including depression, anxiety, back surgeries, neck surgeries, and thyroid. (Tr. 90). She was 59 years old at the time of the alleged onset of her disability, making her an individual of advanced age under the Social Security regulations. (Id.) She later transitioned to be considered an individual closely approaching retirement age at the time her application was considered. (Id.) On the date of the ALJ's decision, the plaintiff had past relevant work experience as a collections clerk, classified as skilled work requiring sedentary exertion. (Tr. 53).

Domasiwiecz's appeal challenges only the ALJ's consideration of her mental impairments of depression and anxiety. With respect to these alleged impairments, the clinical record is quite sparce. At her lawyer's recommendation, she began mental health treatment in February 2020 at Friendship House and was seen every six weeks for medication management, but discontinued psychotherapy after one appointment. (Tr. 790). The Friendship House records show that she was overall stable, with periods of panic and anxiety mostly due to external stressors, but that her impairments were well managed with conservative treatment.

At her intake appointment, she reported that she had been diagnosed by her primary care provider with depression and anxiety and was taking Xanax. (Tr. 304). She reported that she had never previously been evaluated by a psychiatrist or had any mental health treatment, (id.), though at a March psychiatric evaluation she

4

stated she had been in treatment in 2010 for panic, anxiety, and depression and had been prescribed Celexa for a year until her symptoms subsided. (Tr. 322).  She reported no ambition, difficulty sleeping, anxiety and racing thoughts. (Tr. 299). But she also noted that she enjoyed crafts, shopping, visiting her grand kids, and spending time with her best friend, including going for walks, going to lunch, sitting by the pool, and going to craft shows. (Tr. 301). She was diagnosed with panic disorder with PTSD and prescribed Citalopram. (Tr. 310). At a March psychiatric evaluation her mental status was noted as anxious but fully oriented and noted her husband had a massive heart attack the year prior which was adding to her worry. (Tr. 323).

In April 2020 she reported some drowsiness from the medication but described helping with her grand kids and tolerating things better. (Id.) In July 2020 she reported she was less depressed on the Citalogram but that she was having difficulty sleeping and reported night terrors and described "a very clear history of panic symptoms during the night." (Tr. 312-13). Her Citalogram was increased. At her next appointment in September 2020, she reported that she was no longer having night terrors, that she got relief from the increase in the Citalopram and had been doing really well on her current dosage, had no further panic attacks or any night panic. (Tr. 314). But she reported that she was still using Xanax twice daily. (Id.) In December 2020 she again reported no insomnia and that her mood had been quite

stable and she was looking forward to spending Christmas with her daughter, son-in-law, and their two small children who were visiting for the holidays. (Tr. 316). In March 2021, she again reported being "quite stable," her therapist stated she was very pleasant and that she was only using Xanax on an as needed basis. (Tr. 318). Her mental status was pleasant and goal-directed with no evidence of depression, good concentration, insights and judgment. (Id.) In June 2021 her therapist noted no acute evidence of depression or any significant amounts of anxiety except some difficulty at nighttime which she managed with Xanax. (Tr. 320).

The plaintiff began to experience significant depression and anxiety in September 2021 due to the hospitalization of her husband and brother. (Tr. 807). Her Citalopram was increased and more Xanax was prescribed. (Id.) But by December 2021 she reported feeling much better and positive about spending time with her family over the Christmas holiday. (Tr. 809). She stated the Citalopram was very helpful to her and rarely used all her prescribed Xanax in a day. (Id.) She stated she had not been distressed. (Id.) She again reported doing generally well in March, June, and September 2022, noting she had not been experiencing any depression or increased anxiety on Citalopram despite some concerns about her general health and noting that she was not sleeping well. (Tr. 811, 813, 815). Her mood was stable. (Tr. 815).

In November 2022 Domasiweicz's therapist stated her depression was under control but that she was having sleep issues due to pain. (Tr. 817). Her mood was again described as stable and she was not having any break-through episodes of depression or panic. (Id.) She continued to do well in early 2023, with her therapist noting her mood was stable and "self-care is great." (Tr. 819). She noted no evidence of any acute symptoms of depression. (Id.) In April and June 2023 she noted some health stressors due to ongoing GI issues and pain and her husband's health but generally she was doing quite well. (Tr. 1056, 1058).

In addition to the mental health treatment notes from Friendship House, Domasiewicz underwent a mental status evaluation with consultative examiner Jennifer Betts, Psy. D. on June 21, 2022. At that examination, the plaintiff reported difficulty staying asleep due to pain and has a hard time falling back to sleep after waking because she begins thinking. (Tr. 790). She reported generalized anxiety symptoms in the form of excessive worry, especially at night, hyperstartle, hypervigilance particularly related to her husband and his health problems, intrusive thoughts about his medical condition, and sleep disturbance, but denied depressive symptoms, mania, or any significant cognitive symptomology. (Tr. 790-91). Dr. Betts' mental status examination of the plaintiff revealed cooperative demeanor, appropriate eye contact and social skills, coherent and goal directed thought process, full orientation and appropriate affect, intact attention, concentration, and recent and

remote memory. (Tr. 791-92). Her cognitive functioning was average and she had good insight and judgment. (Tr. 792). The plaintiff reported being able to conduct most activities of daily living and enjoyed some socialization outside of the family. (Id.) Dr. Betts noted her prognosis was good associated with mild symptoms which are assisted by medication. (Tr. 793).

Against the backdrop of this medical evidence, two State agency consultants and the consultative examiner opined on Domasiweicz's functional abilities. Following her examination of the plaintiff, on June 22, 2022, Dr. Betts opined that Domasiweicz had moderate limitations in responding appropriately to usual work situations and to changes in a routine work setting due to her anxiety but had no limitations in any other area of functioning. (Tr. 794-95). Indeed, Dr. Betts opined that the plaintiff's mental impairments had no effect on her ability to understand, remember, and carry out instructions, interact appropriately with the public, coworkers, or supervisors, and no effect on her ability to concentrate, persist, or maintain pace, or adapt or manage herself. (Id.) The State agency experts who reviewed Domasiweicz's records were somewhat more conservative in their conclusions, finding the plaintiff's mental impairments were nonsevere but nonetheless caused mild limitations in each area of mental functioning, including in her ability to understand, remember, and carry out instructions, interact appropriately with others, concentrate, persist, and maintain pace, and adapt or

manage oneself. (Tr. 92-93, 101-02). Thus, the ALJ in this case was presented with an examining opinion which concluded the plaintiff had no limitations in three out of four areas of mental functioning, and two non-treating, non-examining source opinions that she was mildly limited in all areas of functioning.

It was against this backdrop that the ALJ conducted a hearing in this case on June 12, 2023, at which Domasiweicz and a vocational expert testified. (Tr. 35-58). The plaintiff testified that she became disabled and unable to work as of May 28, 2018. (Tr. 44). When asked why she believes she is unable to work, the plaintiff specifically stated that her past skilled work as a collections clerk caused significant panic and anxiety and testified that she had difficulty sitting for long periods of time and panic attacks over meeting quotas. (Tr. 45). At the hearing, no party examined the vocational expert about how the plaintiff's mental limitations would affect her ability to perform her past work or any work in the national economy.

Following this hearing, on October 4, 2023, the ALJ issued a decision denying Domasiweicz's application for benefits.[1] (Tr. 14-29). In this decision, the ALJ's Step 2 analysis mirrored the more conservative limitations of the State agency experts,

---

[1] Domasiewicz's claim was denied previously in July 2020, (tr. 65-81), and the Commissioner makes a passing argument that her alleged onset date should be after this denial since the ALJ found no reason to reopen her previous application. It is unclear from the hearing testimony and decision whether the ALJ amended her alleged onset date, which the ALJ acknowledged was May 2018 in the decision. (Tr. 17). We leave that issue up to the Commissioner to clarify on remand.

finding that the plaintiff had mild limitations in all four broad functional areas of mental functioning, or "paragraph B" criteria, but that, because there were no more than mild limitations in these areas, these impairments were considered non-severe. (Tr. 1009-11). The ALJ then concluded the plaintiff did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments in the regulations. (Tr. 22-24).

> The ALJ then fashioned the following RFC for the plaintiff:
>
> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she is capable of occasional climbing of ramps and stair, but she should avoid climbing of ladders and scaffolds, as well as unprotected heights. The claimant can tolerate occasional exposure to extreme cold temperatures, wetness, humidity, vibration, and environmental irritants, such as dust, odors, fumes, gasses, and other pulmonary irritants.

(Tr. 24). Notably this RFC included no limitation for the mild impairments the ALJ found at Step 2. Moreover, the RFC analysis did not explain why no limitations were necessary. In fact, the analysis did not summarize any of the medical evidence of her mental impairments. Instead, the ALJ's RFC analysis focused on the longitudinal medical records of her physical impairments and indicated generally that her activities of daily living were inconsistent with her subjective complaints.

The RFC only mentioned the record of the plaintiff's mental impairments in considering the medical opinions of the State agency mental consultants and consultative examiner, but the ALJ's analysis on this score only further obscured his

decision not to include any mental limitations in the RFC. On this score, before the

ALJ was an opinion by an examining source that the plaintiff had no limitations in

three of the four paragraph B criteria, but the ALJ eschewed this decision in favor

of the mild limitations opined by the non-treating experts, seemingly concluding that

Domasiweicz's mental impairments caused at least some limitation in her ability

function in the workplace. The ALJ concluded the opinion of consultative examiner

Dr. Betts was less than persuasive because her opinion that the plaintiff had no

limitations in mental functioning was inconsistent with the more restrictive opinions

of the State agency mental consultants.[2] (Tr. 28). The ALJ then concluded the

opinions of the State agency mental consultants were persuasive since they

concluded her impairments were non-severe. (Tr. 28). But the ALJ focused on the

benign treatment records in adopting these opinions and did not explain why their

opinions that she did have mild limitations in all areas of functioning were more

---

[2] In our view, the ALJ's analysis of the medical opinion evidence is simply incomplete and internally inconsistent. Thus, the ALJ found Dr. Betts' opinion less than persuasive because her opinion that the plaintiff had moderate limitations in responding appropriately to usual work situations and to changes in a routine work setting was not supported by her own examination of the plaintiff and the medical evidence showing mild symptoms. But the ALJ then found her opinion that she had no limitations in the other three areas of mental functioning unpersuasive and inconsistent with the State agency opinions that she was mildly limited in those areas. The ALJ then did not address the State agency opinions of her mildly functioning in all spheres of workplace mental functioning, instead focusing only on the persuasiveness of the opinions that her mental impairments were not severe.

11

consistent with the record than the consultative examiner's opinion that she had no limitations in three broad areas of functioning.

This conclusion is simply never explained in the remainder of the opinion. On this score, the ALJ acknowledged at Step 2 that the limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment and that the RFC assessment reflected the degree of limitation the ALJ found in the "paragraph B" mental function analysis. But, despite indicating that the plaintiff experienced a mild degree of limitation in all areas of functioning, the ALJ fashioned an RFC which included no limitations for these mild impairments. This was striking, since the ALJ's adoption of mild limitations in all areas of mental functioning despite a finding from a consultative examiner that she had no limitations in three of these areas, explicitly indicated that the ALJ considered her to have at least some limitation in functioning due to her mental impairments.

This confusion was then compounded by the ALJ's Step 4 discussion. The ALJ then found that Domasiweicz was capable of performing her past relevant work as a collections clerk, a skilled position with an SVP of 5. (Tr. 29). The ALJ concluded a vocational expert had testified that an individual with Domasiweicz's same RFC, which excluded any limitations in mental functioning, would be able to perform her past relevant work. However, as noted, the ALJ did not question the VE about what, if any, effects mild limitations in mental functioning would have on her

12

ability to perform this skilled work. Moreover, this Step 4 analysis led to a curious conclusion since it, in effect, found that the plaintiff could return to her past job; the one job which she testified caused her significant panic and anxiety.

This appeal followed. (Doc. 1). On appeal, the plaintiff argues the ALJ's decision was not supported by substantial evidence because the ALJ completely failed to incorporate any mental limitations in the RFC despite finding she suffered mild limitations in functioning. As discussed in greater detail below, while the ALJ's finding of mild limitations in mental functioning at Step 2 does not *per se* require the ALJ to incorporate mental limitations in the RFC, here, the ALJ failed to adequately articulate why such limitations were not necessary despite his conclusion that the plaintiff was mildly limited by her impairments. This failure of articulation was significant since the ALJ concluded she could return to her past skilled work requiring a high level of mental functioning and which the plaintiff specifically testified she could not perform due to her anxiety. Since the ALJ has failed to build a logical bridge between his Step 2 finding and the ultimate RFC, we will remand this case for further consideration by the Commissioner.

## III.   Discussion

### A.   Substantial Evidence Review – the Role of this Court

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the

findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C. §405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F.Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has underscored for us the limited scope of our review in this field, noting that:

The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency

14

factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that [he] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); Burton v. Schweiker, 512 F.Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

15

Several fundamental legal propositions flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that

16

decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

This principle applies with particular force to legal challenges, like the claim made here, based upon alleged inadequacies in the articulation of a claimant's mental RFC. In Hess v. Comm'r Soc. Sec., 931 F.3d 198, 212 (3d Cir. 2019), the United States Court of Appeals recently addressed the standards of articulation that apply in this setting. In Hess the court of appeals considered the question of whether an RFC which limited a claimant to simple tasks adequately addressed moderate limitations on concentration, persistence, and pace. In addressing the plaintiff's argument that the language used by the ALJ to describe the claimant's mental limitations was legally insufficient, the court of appeals rejected a *per se* rule which would require the ALJ to adhere to a particular format in conducting this analysis. Instead, framing this issue as a question of adequate articulation of the ALJ's rationale, the court held that: "as long as the ALJ offers a 'valid explanation,' a 'simple tasks' limitation is permitted after a finding that a claimant has 'moderate' difficulties in 'concentration, persistence, or pace.' " Hess v. Comm'r Soc. Sec., 931 F.3d 198, 211 (3d Cir. 2019). On this score, the appellate court indicated that an ALJ offers a valid explanation a mental RFC when the ALJ highlights factors such as "mental status examinations and reports that revealed that [the claimant] could function effectively; opinion evidence showing that [the claimant] could do simple

17

work; and [the claimant]'s activities of daily living, . . . . " Hess v. Comm'r Soc. Sec., 931 F.3d 198, 214 (3d Cir. 2019).

In our view, the teachings of the Hess decision are straightforward. In formulating a mental RFC the ALJ does not need to rely upon any particular form of words. Further, the adequacy of the mental RFC is not gauged in the abstract. Instead, the evaluation of a claimant's ability to undertake the mental demands of the workplace will be viewed in the factual context of the case, and a mental RFC is sufficient if it is supported by a valid explanation grounded in the evidence.

### B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §§404.1505(a), 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or he contributed to

18

the insurance program, is under retirement age, and became disabled prior to the date on which he or he was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett, 220 F.3d at 121 (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

Once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018); Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017)..

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §§404.1512(f), 416.912(f); Mason, 994 F.2d at 1064.

The ALJ's disability determination must meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence

20

standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).

### C.    **This Case Will be Remanded for Further Consideration.**

At the outset, it is important to note that it does not appear the plaintiff challenges the ALJ's Step 2 conclusion that she has only mild limitations in the four "paragraph B" criteria of mental functioning. In our view, substantial evidence supports the ALJ's evaluation on this score since the longitudinal medical record of her anxiety and depression is relatively benign and shows that her impairments were well managed with medication and she often reported being quite stable.

Furthermore, in the past we have declined to adopt a categorical rule regarding when an ALJ must include mental limitations in the RFC. Indeed, we have affirmed cases in which an ALJ concluded a claimant had mild impairments in some areas of mental functioning but did not include any mental limitations in the RFC. See e.g. Nelson v. Bisignano, No. 4:24-CV-263, 2025 WL 2713743 (M.D. Pa. Sept. 23,

2025); Lankford v. O'Malley, No. 3:23-CV-1106, 2024 WL 5078104 (M.D. Pa. Dec. 11, 2024). This approach is guided by Hess, which instructs us not to gauge the adequacy of the mental RFC in the abstract but rather view the evaluation of a claimant's ability to undertake the mental demands of the workplace in the factual context of the case, finding a mental RFC sufficient if it is supported by a valid explanation grounded in the evidence. Our assessment of the ALJ's decision is further guided by the Third Circuit's mandate that "the ALJ must provide a discussion of the evidence and an explanation of reasoning for his conclusion sufficient to enable meaningful judicial review." Diaz v. Comm'r of Soc. Sec., 577 F.3d at 504 (citations omitted).

Under these guideposts, we conclude the ALJ's RFC assessment in this case was insufficient in that it failed to fully and adequately address the plaintiff's mental impairments in the RFC assessment. At the outset, while "the ALJ's consideration of the individual's non-severe impairments does not amount to a requirement that the ALJ must include limitations in the RFC associated with mild impairments," Weidner v. Kijakazi, No. CV 20-1250-MN, 2022 WL 610702, at *9 (D. Del. Feb. 1, 2022), report and recommendation adopted, No. CV201250MNSRF, 2022 WL 610678 (D. Del. Feb. 16, 2022) (citing Smith v. Comm'r of Soc. Sec., 2016 WL 3912850, at *9 (D.N.J. July 19, 2016)), it is well settled that, despite a finding of non-severe mental impairments at Step 2, an ALJ must at least consider those

22

impairments when fashioning the RFC. Indeed, this Court has recognized the requirement that:

> As a general matter, an ALJ must consider limitations and restrictions associated with all of a claimant's impairments, both severe and non-severe, when formulating the RFC. 20 C.F.R. § 404.1545(a)(2). "[T]he Commissioner's procedures do not permit the ALJ to simple rely on his finding of non-severity as a substitute for a proper RFC analysis." Wells v. Colvin, 727 F.3d 1061, 1065 (10th Cir. 2013). "A conclusion that the claimant's mental impairments are non-severe at step two does not permit the ALJ to simply disregard those impairments when assessing a claimant's RFC and making conclusions at step four and five." Id. at 1068–69.

Kich v. Colvin, 218 F. Supp. 3d 342, 355–56 (M.D. Pa. 2016).

Nonetheless, the requirement in Wells that an ALJ must explain the reasons for excluding mild mental functional limitations is cabined by the Third Circuit's holding in Hess that an ALJ's mental RFC assessment should be upheld "as long as the ALJ offers a 'valid explanation,'" for that assessment. Hess v. Comm'r Soc. Sec., 931 F.3d 198, 211 (3d Cir. 2019). Indeed, as previously noted, an ALJ offers a valid explanation of a mental RFC when the ALJ highlights factors such as "mental status examinations and reports that revealed that [the claimant] could function effectively; opinion evidence showing that [the claimant] could do simple work; and [the claimant]'s activities of daily living, . . . ." Hess v. Comm'r Soc. Sec., 931 F.3d 198, 214 (3d Cir. 2019). See also Shaffer v. Colvin, 2014 WL 4925067, at *5 (W.D. Pa. Sept. 30, 2014) ("It is clear from the record that the ALJ adequately considered all of the relevant medical evidence, as well as plaintiff's reported activities, in

23

assessing plaintiff's residual functional capacity, and that he incorporated into his finding all of the limitations that reasonably could be supported by the medical and other relevant evidence."); McCafferty v. Astrue, 2008 WL 1869282, at *4 (E.D. Pa. Apr. 25, 2008) (finding that the requirements of SSR 96-8p were satisfied by ALJ's narrative discussion of the claimant's functional limitations in the context of the objective medical evidence, doctors' notes and opinions, the claimant's activities of daily living, and the claimant's subjective complaints).

Moreover, courts in this circuit have consistently held that "even mild limitations in the relevant domains of mental functioning must be included in an RFC assessment and hypothetical question posed to the VE that the ALJ relies upon." Gunn, 705 F. Supp. 3d at 331 (quoting Meersand v. Kijakazi, No. 20-1084, 2021 WL 5003331, at *3 (E.D. Pa. Oct. 28, 2021) (collecting cases). See also Shine v. Bisignano, No. 4:24-CV-02039, 2026 WL 900518, at *4 (M.D. Pa. Mar. 30, 2026) (remanding where the ALJ failed to discuss the plaintiff's non-severe mental impairments in the RFC assessment); Lesko v. Comm'r, Soc. Sec. Admin., No. 2:24-CV-01660-CBB, 2025 WL 3677017, at *7 (W.D. Pa. Dec. 18, 2025) (remanding where ALJ failed to account for mild limitations in mental functioning in RFC); Maria A. v. Comm'r of Soc. Sec. Admin., No. CV 23-2484 (MAS), 2024 WL 943466 (D.N.J. Mar. 5, 2024) (same).

24

In this case, it is clear from the ALJ's Step 2 assessment and treatment of the medical opinion evidence that, while the ALJ ultimately concluded the plaintiff's mental impairments were non-severe, he believed these impairments caused some limitation in her ability to perform work-related activity. It is important to note that, under the regulations, "there is a difference between 'mild limitation' and 'no limitation'" Bonnie H. v. Saul, No. 22-CV-5825, 2023 WL 12175267, at *3 (N.D. Ill. Mar. 31, 2023) (citing 20 CFR 404, Subpart P, Appendix 1, 12.00(F)(2) (stating that no limitations means "[y]ou are able to function in this area independently, appropriately, effectively, and on a sustained basis," while a mild limitation means "[y]our functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited."). Here, the ALJ clearly concluded that the plaintiff's functioning in all four areas of mental functioning was at least slightly limited. This is evidenced by the ALJ's express rejection of the opinion of consultative examiner Dr. Betts, who concluded the plaintiff had no limitations in her ability to understand, remember, and carry out instructions, interact appropriately with the public, coworkers, or supervisors, and no effect on her ability to concentrate, persist, or maintain pace, or adapt or manage herself. (Tr. 794-95), concluding it was inconsistent with the opinions of the State agency psychological consultants, who concluded she had mild limitations in these arenas. In our view, the opinion of consultative examiner Dr. Betts provided the ALJ with an opportunity to

adopt no limitations in at least three of the areas of mental functioning if the ALJ concluded the plaintiff's mental impairments had no effect on her ability to perform work-related activity. But the ALJ clearly and explicitly bypassed this off-ramp and instead adopted mild limitations in all four areas of mental functioning, indicating that her functioning in those areas was slightly limited.

The ALJ then failed to include these mild limitations in mental functioning in the RFC assessment. On this score, the ALJ acknowledged the plaintiff's subjective statements about her mental impairments, including her testimony and the statements of her husband that she has difficulty concentrating, anxiety affecting her sleep, and panic attacks, but stated that her statements concerning the intensity, persisting, and limiting effects of these symptoms were not entirely consistent with the medical evidence. The RFC assessment then does not address the medical evidence of her mental impairments, including any treatment notes from her medication management at Friendship House. Instead, the summary of the medical evidence focuses only on her physical impairments. The ALJ then notes generally that her activities of daily living are inconsistent with her subjective statements but does not specifically explain how they are inconsistent with her psychological symptoms.

The only place in the RFC assessment where the ALJ does reference the record of her mental impairments is in evaluating the medical opinions. Yet, the

ALJ's analysis of these opinions does not explain why, if she required no limitations in mental functioning in the RFC, he adopted mild limitations in mental functioning despite the consultative examiner's opinion that she had no limitations in three out of four areas of functioning. Thus, a review of the decision as a whole reveals that the ALJ concluded the plaintiff had at least a slight limitation in all spheres of her workplace mental abilities but failed to either account for those limitations in the RFC or make an explicit finding that those limitations were so minimal that they would not limit her ability to perform work-related tasks. Moreover, the ALJ did not include any hypothetical questions to the VE that would have addressed these mild limitations in functioning. This was error.

This error is compounded by the fact that the ALJ then concluded the plaintiff was capable of performing her past skilled work. While there is no categorical rule that mild limitations in "paragraph B" criteria *per se* preclude an individual from performing skilled work, see O'Connor v. Commissioner Social Sec., 466 Fed. Appx. 96 (3d Cir. 2012) (finding claimant was capable of performing skilled work as an attorney despite mild limitations in mental functioning), we are without the benefit of vocational expert testimony as to what jobs the plaintiff could perform despite her mild mental limitations. This is particularly relevant where the plaintiff testified that it was, in fact, specifically her past work as a collections clerk that caused her to have anxiety and panic attacks due to having to sit for long periods and

27

meet quotas. (Tr. 45). Certainly, more explanation was needed here for the ALJ to reject the plaintiff's testimony and conclude she was capable of performing her past skilled work.[3]

Simply put, more is needed here. It is axiomatic that the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). This means that there must be a logical nexus between the ALJ's factual findings and legal conclusion. That logical bridge is missing here where the limiting effects of Domasiweicz's mental impairments were never fully evaluated by the ALJ. Since the ALJ's burden of

---

[3] The finding on the part of the ALJ that the plaintiff could return to her past skilled work is also significant in another way since the regulations have strict requirements for a finding of transferability of skills for a person of advanced and retirement age. On this score, the regulations dictate that:

> If you are closely approaching retirement age (age 60 or older) and you have a severe impairment(s) that limits you to no more than light work, we will find that you have skills that are transferable to skilled or semiskilled light work only if the light work is so similar to your previous work that you would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry.

20 C.F.R. § 404.1568. Thus, if the ALJ concluded she could not return to her past work, her options for other work that exists in the national economy would be significantly more limited due to her age. This only highlights the need both for vocational expert testimony on the effect of these mild limitations on her ability to work and for the ALJ to further explain why she could perform her past work despite her mental impairments which she testified made her unable to perform this work.

28

articulation is not met in the instant case, this matter must be remanded for further consideration by the Commissioner. Yet, while we reach this result, we note that nothing in this Memorandum Opinion should be deemed as expressing a judgment on what the ultimate outcome of any reassessment of this evidence should be. Rather, the task should remain the duty and province of the ALJ on remand.

## III.    Conclusion

Accordingly, given that we find the ALJ's determination is not supported by substantial evidence, the final decision of the Commissioner will be VACATED, and this case will be REMANDED for further consideration by the Commissioner.

An appropriate order follows.

/s/ *Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

DATED: April 24, 2026